[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO SUPPRESS STATEMENT
The defendant, Jean-Yves Jean-Jacques was charged with (1) the murder of Fresnel Eugene, C.G.S. § 53a-54a; (2) the attempt to murder Nadia Joseph, C.G.S. §§ 53a-49(a)(2) and53a-54a; and (3) carrying a pistol or revolver without a permit, C.G.S. § 29a-35(a). These crimes were alleged to have occurred at approximately 9:00 p.m. on February 4, 1996, in the parking lot of an apartment complex located in Norwich, Connecticut.
Within hours, the defendant was located, arrested and taken to the Norwich Police Department. After routine processing, police conducted an in-depth interview with the defendant. Statements made during this interview were the subject of defendant's suppression motion. Defendant's motion stated:
 "The undersigned hereby moves to suppress the statement made by the defendant while in the custody of the Norwich Police on February 5, 1996. In support thereof, the undersigned alleges that the defendant, who speaks and understands limited English, did not intelligently and voluntarily waive his Fifth Amendment right not to incriminate himself. Additionally, the undersigned alleges that he invoked his Sixth Amendment right to counsel, and such request was ignored by the police." CT Page 9093 Motion To Suppress Statement, January 31, 1997.
The thrust of defendant's first claim is that he is not fluent in English; his primary language is Haitian Creole. Because he was not given the Miranda warnings in that language, he did not validly waive his Fifth Amendment rights.
The defendant, age 23, was born in Haiti. He had graduated from high school in Haiti. He had been in the United States six years. For the year preceding his arrest he owned a clothing store in Norwich. He acted as a salesman. The store customers were predominantly English speaking. There is no evidence language interfered with his work.
Police found defendant at an apartment at approximately midnight. He was lying on a bed in a bedroom. He was asked if he had a gun. He replied he did not. At that time, there was no indication defendant had any language difficulty. He was told to get dressed and was escorted from the apartment. Outside near a police vehicle, he was put in handcuffs and placed in a cruiser for transport to the police station. He appeared to follow all instructions given him; no language difficulty was noted. At the police department, he was taken to the booking room. He was read his Miranda rights in English and appeared to understand them. Police also obtained information from him sufficient to fill out property intake and medical intake forms and information regarding his personal history. Defendant testified that Russo, the lead investigator, asked him about his family, siblings, etc. According to defendant this conversation was not long "because he was asking me questions about my siblings and I just answered him. I could understand what he's saying." 117.
Before questioning defendant about the previous day's activities, the lead investigator, Russo, decided it would be prudent to get an interpreter to avoid any language problems in the future. This was to insure that there would be no misunderstanding.
A state trooper, Richard Alexandre from Troop K, Colchester, was asked to come to the Norwich Police Department. He arrived some time between 3:00 and 3:30 a.m. on February 5. Prior to Trooper Alexandre's arrival, defendant was not questioned regarding his activities during the previous day. CT Page 9094
Trooper Alexandre is of Haitian decent. Both his parents were born in Haiti. Trooper Alexandre, age 32, was born in the United States and has lived here his entire life. The language used in his home was Haitian Creole. Trooper Alexandre has visited Haiti on numerous occasions and has been able to converse there in Haitian Creole, the common language of the Haitian people. Trooper Alexandre testified he is fluent in Haitian Creole. The Court so finds.
Sometime before 4 o'clock, Investigator Russo began questioning the defendant with the assistance of Trooper Alexandre. This interview began with Trooper Alexandre reading the Miranda rights to the defendant in English and then in Haitian Creole. Each right was read in Haitian Creole separately. Defendant was asked to acknowledge his understanding of each right by initialing each right on a rights form. Defendant initialed each right. Exhibit.
Russo asked defendant questions in English. Alexandre translated Russo's questions into Haitian Creole. Defendant answered in Haitian Creole which Alexandre then translated into English.
The interview lasted until approximately 11:00 a.m. Breaks were taken from 5:10 to 5:30, 7:30 to 7:45 and 9:30 to 9:55 a.m. The defendant was given food and coffee during the interview. There were breaks for use of the bathroom. Only Russo, Alexandre and defendant were present. Neither officer had any weapon. The defendant answered the questions readily. Apparently he did not ask to have any of the questions repeated. He appeared alert, made no request to stop, etc. At no time, according to the police, did defendant ask for or mention his wanting to have an attorney.
At a later time, Detective Daigle of the Norwich PD met with defendant in order to have gunshot residue tests performed on his hands. Daigle met with defendant for ten minutes. Daigle spoke to the defendant in English. The defendant responded appropriately. During this time, Daigle engaged defendant in a general conversation about their (Daigle's and defendant's) prior contacts. No language problem appeared during this conversation.
The principal claim here is that the defendant, because of a language problem, was unable to understand his Fifth Amendment rights, and therefore, was unable to waive them. He also claims CT Page 9095 he did not understand all of Alexandre's Haitian Creole.
The Court found that during the February 5 questioning the defendant was afforded, a competent translator, Trooper Alexandre. The court doubted a translator was needed. Nevertheless, the court found the defendant was able to understand the things said to him in English when translated for him by Trooper Alexandre.
Defendant testified he wanted to talk to the police.
The Court found, by a fair preponderance of the evidence, that the defendant understood and waived his Fifth Amendment rights.
The defendant also claims that he asked for an attorney while he was in the police custody on February 4-5. He says he first asked Russo for an attorney soon after he was brought to the police department when Russo told him he was charged with killing Eugene. Russo spoke in English. Defendant testified that he (defendant) asked for the lawyer in English. This undercuts his claim that did not understand his rights. Defendant said he also asked Trooper Alexandre for a lawyer.
Daigle, Alexandre, and Russo, the officers to whom he could have made such a request, all testified that no such request was made. The Court found that defendant never asked for or asserted a right to counsel.
For the foregoing reason, the court denied the defendant's Motion To Suppress Statement on March 17, 1997.
Parker, J. CT Page 9096